

FILED

·JAN 19 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No  11-28853-D-7 |
| ROBERT MATTHEW LANGFIELD and JULIE LEIGH LANGFIELD, | Docket Control No  DNL-2 |
| Debtors | Date   December 14, 2011<br>Time   10 00 a m<br>Dept   D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion**

### MEMORANDUM DECISION

On September 28, 2011, the chapter 7[1] trustee in this case, J  Michael Hopper (the "Trustee"), filed a Motion to Approve Compromise (the "Motion") to resolve certain relief that was requested by Evelyn Pettit Rollins ("Pettit") in Adversary case number 11-02499 (the "Complaint")  As of August 31, 2011, the Trustee and Pettit entered into a settlement agreement (the "Settlement Agreement")  The hearing on the Motion was twice continued, and on December 14, 2011, the court took the Motion under submission  For the reasons set forth below, the court will grant the Motion

///

---

1    Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U S C  §§ 101-1532  All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037



## I    THE COMPROMISE

The matter proposed to be compromised is Pettit's request in the Complaint for declaratory relief that Robert Matthew Langfield and Julie Leigh Langfield (the "Debtors" or "Defendants") do not own in fee simple the one-acre real property parcel located at 3327 and 3331 County Road 88B, Dunnigan, California 95937 (the "Dunnigan Property") [2] Moreover, Pettit claims that she has an equitable ownership interest in the Dunnigan Property pursuant to a purported arrangement between her and the Debtors [3]

Pettit is married to Julie Langfield's father, Willard D Rollins    Pettit asserts that she offered the Debtors a sum of money for the specific purpose of enabling the Debtors to make improvements to the Dunnigan Property    In exchange, Pettit claims that Robert Langfield agreed to perform the necessary labor to install a modular home and garage on the Dunnigan Property, and allow Pettit and Rollins to live on the Dunnigan Property for the rest of their lives -- rent-free    Pettit

/ / /

2    The Debtors estimate that the value of the Dunnigan Property is $180,000 00, subject to a $50,000 00 secured claim held by Robert and Alicia Larsen of Sacramento, California, and a $2,042 00 secured property tax claim held by the County of Yolo The Debtors claim a homestead exemption in the Dunnigan Property with a value of $127,958 00    Debtors' Schedules A & C, filed on April 8, 2011

3    In the Complaint, Pettit's prayer for relief includes, in relevant part, a request for a judgment declaring that the Defendants do not own the Dunnigan Property in fee simple, awarding Pettit a proportionate ownership interest in the Dunnigan Property, and ordering that the affairs of the joint venture be winded up lawfully    Pettit's Complaint to Determine Dischargeability of a Debt, filed on July 14, 2011 at ¶¶ 3-5

1  asserts that this arrangement gave rise to a "joint venture"
2  between Pettit and the Debtors

3      As reflected in the Settlement Agreement, the compromise
4  provides that Pettit will assign to the Trustee all her rights in
5  the purported joint venture in the Dunnigan Property, including
6  Pettit's claimed equitable ownership interest in the Dunnigan
7  Property, attendant profits and return of capital, and Pettit's
8  right to object to the Debtors' homestead exemption [4]   In
9  exchange for this concession, Pettit will be granted a
10  $125,000 00 allowed claim against the Debtors' bankruptcy estate,
11  secured by 50% of the net proceeds that are eventually realized
12  if and when the Trustee sells the Dunnigan Property [5] [6]
13  Significantly, the Settlement Agreement provides a release
14  whereby Pettit will not pursue further any claim of ownership in
15  the Dunnigan Property [7]

16      In effect, the Settlement Agreement resolves the relief
17  requested in the Complaint, namely, Pettit's request for an order
18  declaring that the Debtors do not own the Dunnigan Property in
19  fee simple, that Pettit has an equitable ownership interest in
20  / / /

21

22      [4]   Motion to Approve Compromise, filed on September 28,
23  2011 ("Motion") at 2 20-21, Motion, Exh  A, Settlement Agreement,
    executed on August 31, 2011 ("Agreement") at ¶ 2

24      [5]   The Debtors' have indicated that Pettit has an unsecured
25  claim of $77,046 00 pursuant to a promissory note   The Debtors'
    have also listed an unsecured claim for the same amount in the
26  name of Willard Rollins, also pursuant to a promissory note
    Debtors' Schedule F, filed on April 8, 2011

27      [6]   Motion, Exh  A, Agreement at ¶ 4

28      [7]   Motion, Exh  A, Agreement at ¶ 5

                          - 3 -

1  the Dunnigan Property, and that there is a joint venture that is
2  required to be wound up

3                  **II    THE POSITIONS OF THE PARTIES**

4      The Trustee contends that the compromise is fair and
5  equitable under applicable Ninth Circuit standards   The court
6  agrees, application of the relevant factors will be discussed
7  below

8      The Debtors oppose the Motion   They contend that (1)
9  Pettit's ownership claim in the Dunnigan Property is uncertain
10  and yet to be determined and (2) the Trustee has failed to make a
11  prima facie showing of the relevant factors used in determining a
12  Rule 9019 motion

13      It is significant that no other parties aside from the
14  Debtors have objected to the compromise, and that the compromise
15  eliminates a significant impediment to the Trustee's efforts to
16  administer the Dunnigan Property for the benefit of the estate

17      As discussed below, the court finds that the Settlement
18  Agreement is fair and equitable and is in the best interest of
19  the estate in that it resolves contentious and expensive
20  litigation with Pettit over the estate's main asset   the Dunnigan
21  Property

22                        **III    ANALYSIS**

23      This court has jurisdiction over the Motion pursuant to 28
24  U S C  §§ 1334 and 157(b)(1)   The Motion is a core proceeding
25  under 28 U S C  § 157(b)(2)(A), (B), (C), (I), and (O)

26  **A   Applicable Legal Standards**

27      "The law favors compromise and not litigation for its own
28  sake, and as long as the bankruptcy court amply considered the

various factors that determined the reasonableness of the
compromise, the court's decision must be affirmed " In re A & C
Properties, 784 F 2d 1377, 1381 (9th Cir  1986)   "Rather than an
exhaustive investigation or a mini-trial on the merits, the
bankruptcy court need only find that the settlement was
negotiated in good faith and is reasonable, fair and equitable "
Spirtos v  Ray (In re Spirtos), 2006 Bankr  LEXIS 4894 at *32
(9th Cir  B A P  2006)   The court's "proper role is 'to canvas
the issues and see whether the settlement falls below the lowest
point in the range of reasonableness '" Id  (quoting In re
Pacific Gas & Elec  Co , 304 B R  395, 417 (Bankr  N D  Cal
2004))

**B    The Compromise is Fair and Equitable[8]**

Although the bankruptcy court has "great latitude in
approving compromise agreements," it may approve a compromise
only if it is "fair and equitable " In re Woodson, 839 F 2d 610,
620 (9th Cir  1988), citing A & C Properties, 784 F 2d at 1381
In making this determination, the court must consider the
following factors

> (a) The probability of success in the litigation, (b)
> the difficulties, if any, to be encountered in the
> matter of collection, (c) the complexity of the
> litigation involved, and the expense, inconvenience and

---

8    The Trustee asserts that the Debtors lack standing to
oppose the compromise   The court disagrees   Rule 9019 provides
that, "[n]otice shall be given to creditors, the United States
trustee, *the debtor*, and indenture trustees as provided in Rule
2002 and to any other entity as the court may direct " Fed  R
Bankr  P  9019(a) (emphasis added)   Thus, the plain language of
Rule 9019 contemplates *the debtor* as a potential objector to a
compromise motion   See In re RFE Indus's, Inc , 283 F 3d 159,
164 (3d Cir  2002)("It is implicit in the debtor's being given
notice in this fashion that the debtor may object to a proposed
settlement ")

1    delay necessarily attending it, (d) the paramount
2    interest of the creditors and a proper deference to
     their reasonable views in the premises

3  <u>Id</u>

4        "The trustee, as the party proposing the compromise, has the
5  burden of persuading the bankruptcy court that the compromise is
6  fair and equitable and should be approved "   <u>A & C Properties</u>,
7  784 F 2d at 1381   The Trustee depicts Pettit as a sympathetic,
8  elderly woman, who was induced to give a substantial sum of money
9  towards improvements on the Dunnigan Property -- a set of facts
10 that may garner the sympathy of a fact finder   Although the
11 Trustee makes only a cursory analysis as to Pettit's probability
12 of success in the litigation, the Trustee makes a far more
13 compelling case on the other relevant <u>Woodson</u> factors, as
14 discussed below

15       The Debtors, on the other hand, completely misapprehend the
16 court's role in ruling upon the Motion   The Debtors attempt to
17 litigate -- through their papers -- the merits of Pettit's claim
18 to ownership in the Dunnigan Property   Specifically, they set
19 forth various sections of the California Civil Code and make
20 arguments based in contract law as their basis for refuting
21 Pettit's asserted ownership interest in the Dunnigan Property [9]
22 These arguments are not dispositive in the context of a Rule 9019
23 motion   In fact, such arguments in opposition represent a
24 misunderstanding of the court's role in ruling on a Rule 9019
25 compromise motion   The court is not required to rule on disputed
26 issues of fact, but only to canvas the issues   <u>Burton v  Ulrich</u>

27

28     [9]   Opposition of Motion to Approve Compromise, filed on
     October 11, 2011 ("Opposition") at 3 3-5 11

1  (In re Schmitt), 215 B R  417, 423 (9th Cir  B A P  1997)    Thus,
2  the court need not determine whether Pettit's asserted ownership
3  right in the Dunnigan Property -- whether by joint venture, life
4  estate, or otherwise -- in fact exists

5      Although the Trustee provides only a cursory analysis of one
6  prong of the Woodson factors, this is not dispositive    The
7  probability of success factor is just one factor among others
8  On balance, the court finds that the compromise clearly satisfies
9  the other relevant Woodson factors, and, as such, the court
10 concludes that the compromise is fair and equitable and in the
11 best interest of the estate

12     The Trustee has succeeded in compromising Pettit's claim of
13 ownership under terms that are reasonable under all the
14 circumstances, including, as discussed below, the likely costs of
15 litigation, and Pettit has agreed to assign all ownership rights
16 in the Dunnigan Property to the Trustee    This assignment of
17 rights transmutes a three-party dispute over the Dunnigan
18 Property into a two-party dispute, which will translate to
19 substantial benefits to the estate

20     The Woodson factor concerned with difficulties in the matter
21 of collection is neutral to the Motion    Since the legal matter
22 proposed to be compromised is Pettit's purported interest in the
23 Dunnigan Property, the appropriate remedy would be a quiet title
24 action or some other declaratory remedy    In that sense, because
25 the recovery would not be monetary, there is no matter of
26 collection

27     The remaining Woodson factors are what put this compromise
28 well within the range of reasonableness    Namely, the complexity

of the litigation and the associated expense, inconvenience and
delay, and the paramount interest of the creditors weigh in favor
of the court's approval

Litigation of Pettit's asserted ownership interest in the
Dunnigan Property is not as simple as the Debtors make it
Pettit's assertion of a joint venture with the Debtors
necessarily entails a fact-intensive inquiry based in general
partnership law    Under California law and general partnership
principles, a partnership is an association of two or more
persons to carry on, as co-owners, a business for profit [10]    Since
the arrangement between Pettit and the Debtors results from oral
agreements, the task of divining the parties' intent would be
difficult and time consuming    The same expensive and time-
consuming inquiry would take place in the context of determining
whether Pettit was given a life tenancy in the Dunnigan Property

Pettit, the estranged wife of Julie Langfield's father,
allegedly parted with a significant amount of money in pursuit of
having a home developed by her then son-in-law, Robert Langfield
The court is convinced that, without the proposed compromise,
Pettit would be prepared to litigate her alleged ownership in the
Dunnigan Property    The Trustee would have to expend resources of
the estate -- both in terms of time and money -- to challenge
Pettit in the event that the Trustee proceeds to market and sell
the Dunnigan Property

In his objection to the Debtors' homestead exemption, the
Trustee asserts the very same claim that Pettit has agreed to

---

[10]    See generally Cal  Corp  Code § 16202(a)(defining
formation of a partnership)

- 8 -

compromise under the Motion  that the Dunnigan Property is the
property of a joint venture between Pettit and the Debtors   As
such, the court finds reasonable the Trustee's decision to
combine Pettit's claims against the Debtors with the Trustee's
exemption objection   Doing so eliminates the complexity and
confusion that would arise if Pettit's claims were being
litigated at two different levels  i e , Pettit vs  the Debtors,
and Pettit via the Trustee's exemption objection vs  the Debtors

If the Trustee is successful in his objection to the
Debtors' homestead exemption, it should result in a meaningful
distribution to creditors   With that said, the court is also
sensitive to money spent investigating and litigating contentious
and distracting issues, which would result in fewer dollars being
available to creditors   Accordingly, because the court perceives
unnecessary complexity and attendant expense and delay in the
litigation of Pettit's ownership claims without a compromise,
this factor weighs heavily in favor of the compromise

Finally, the compromise serves the paramount interest of
creditors and reflects a proper deference to their reasonable
views   The court is mindful that only the Debtors opposed the
Motion, no creditor has voiced any opposition to the compromise
Although this alone is not dispositive, it is considered by the
court in determining what is in the best interest of the
creditors   The certainty that litigation would be expensive and
time-consuming, and the likelihood that even a successful outcome
may be significantly offset by the costs of achieving it, the
court concludes that the compromise is in the best interest of
creditors and the estate

The court will not second guess the Trustee's business judgment in agreeing to provide Pettit with an allowed claim of $125,000 00   That figure incorporates Pettit's scheduled claim of $77,046 00 and attributes some value to Pettit's purported interest in the Dunnigan Property   The court agrees with the Trustee that having the ability to efficiently administer and sell the Dunnigan Property without distracting and litigious confrontation from Pettit is a substantial benefit to creditors -- indeed, of paramount importance to creditors

**IV    CONCLUSION**

The court concludes that the relevant <u>Woodson</u> factors significantly weigh in favor of the compromise, and thus, that the compromise is fair and equitable

The court will enter an appropriate order

Dated   January 19, 2012

ROBERT S  BARDWIL
United States Bankruptcy Judge

- 10 -

Case 11-28853    Filed 01/19/12    Doc 120

1  PLEASE SERVE THE FOLLOWING PARTIES

2

3
Robert & Julie Langfield
P O Box 142
4  Dunnigan CA 95937

5
J Michael Hopper
6  PO Box 73826
Davis CA 95617

7

8  Cynthia R Flahive
2360 East Bidwell Street, Suite 105
9  Folsom CA 95630

10
J Michael Hopper
11  PO Box 73826
Davis CA 95617

12

13  J Russell Cunningham
1830 15th St
14  Sacramento CA 95811

15
Evelyn Pettit Rollins
c/o George T Burke
16  428 J St #221
Sacramento CA 95814
17

18

19

20

21

22

23

24

25

26

27

28

- 2 -