FILED

JAN 19 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-28853-D-7 |
| ROBERT MATTHEW LANGFIELD and JULIE LEIGH LANGFIELD, | Docket Control No. DNL-3 |
| Debtors | Date:  December 14, 2011<br>Time:  10:00 a.m.<br>Dept:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION

Robert Matthew Langfield and Julie Leigh Langfield (the "Debtors") commenced their bankruptcy case by filing a joint voluntary petition on April 8, 2011. On Schedule A of their chapter 7[1] petition, the Debtors listed a one-acre real property parcel located at 3327 and 3331 County Road 88B, Dunnigan, California 95937 (the "Dunnigan Property"). On September 29, 2011, the chapter 7 trustee in this case, J. Michael Hopper (the "Trustee"), filed Trustee's Amended Objection to Claim of Homestead Exemption (the "Objection").

The Debtors have claimed a homestead exemption on the

---

 1  Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.



Dunnigan Property.[2]  The Objection challenges the Debtors' homestead exemption, arguing, inter alia, that the Debtors' domicile is not the Dunnigan Property in California, but instead, is a property located at 417 McCourt Street, Klamath Falls, Oregon 97601 (the "Klamath Falls Property").  Based on the objective facts, the court agrees that the Debtors' domicile is the Klamath Falls Property, as such, the Debtors may not claim a homestead exemption on the Dunnigan Property.  For the reasons set forth below, the court will sustain the Objection.

## I.  THE DEBTORS' ACTIVITIES IN CALIFORNIA AND OREGON

In their Statement of Financial Affairs ("SOFA"), the Debtors describe their occupancy in the Dunnigan Property and the Klamath Falls Property as follows:

| Property | Dates of Occupancy |
|---|---|
| The Dunnigan Property | 02/2011-Present |
| The Klamath Falls Property | 10/2010-02/2011 |
| The Dunnigan Property | 05/2008-10/2010 |
| The Klamath Falls Property | 03/1983-05/2008[3] |

The Debtors have owned and occupied the Klamath Falls Property since March 1983.[4]  On May 21, 2008, the Debtors entered into a

---

[2]  Initially, the Debtors asserted the homestead exemption under Cal. Code Civ. Proc. § 704.730.  Schedule C, filed April 8, 2011.  Subsequently, the Debtors amended their schedules and changed the law providing the claimed exemption to Cal. Code Civ. Proc. § 704.950.  Amended Schedule C, filed October 14, 2011.  The value of the claimed exemption is $127,958.00.

[3]  SOFA at Question #15.

[4]  Declaration of J. Michael Hopper in Support of Trustee's Objection to Claim of Homestead Exemption, filed September 28, 2011 ("Dec. Trustee") at ¶ 5.

land sale contract to purchase the Dunnigan Property.[5] On August 11, 2008, the Debtors proceeded to close escrow on their purchase of the Dunnigan Property.[6]

According to Evelyn Pettit Rollins ("Pettit"), the estranged wife of Julie Langfield's father, Willard Rollins ("Rollins"), on or about December 2008, the Debtors proposed that Pettit and Rollins could live at the Dunnigan Property, rent-free, if Pettit agreed to finance the purchase and installation of a modular home on the Dunnigan Property.[7] After Pettit advanced funds, the Debtors commenced a substantial construction project to make improvements on the Dunnigan Property, including the installation of the modular home.[8] After the modular home was installed in August 2009, Pettit and Rollins relocated from Arizona to the Dunnigan Property.[9] According to Pettit, in October 2009, the Debtors made entreaties to Pettit and Rollins to relocate to Oregon, nevertheless, at that time, Pettit and Rollins remained at the Dunnigan Property.[10] Pettit claims that, during the construction project, the Debtors occupied the Klamath Falls

---

5   Exhibits Binder #1 to Trustee's Objection to Claim of Homestead Exemption, filed September 28, 2011, Exh. F ("May 20, 2008 Residential Purchase Contract").

6   Dec. Trustee at ¶ 15.

7   Declaration of Evelyn Pettit in Support of Objection to Exemption, filed September 28, 2011 ("Dec. Pettit") at ¶ 4.

8   Dec. Pettit at ¶ 5.

9   Dec. Pettit at ¶ 7.

10   Dec. Pettit at ¶ 8.

Property and the Dunnigan Property [11]

There are conflicting accounts of Robert Langfield's affiliations with churches in Dunnigan, California and in Klamath Falls, Oregon. The Debtors assert that Robert Langfield worked as a pastor for Dunnigan Christian Community Church / Zamora Church in Dunnigan, California from May 2008 through July 4, 2010. Prior to that, Robert Langfield was a pastor at Klamath Calvary Chapel in Klamath Falls, Oregon.[12] The Debtors also assert that, between August 2010 through September 2011, the Debtors "commuted" from Thursday through Sunday to conduct "religious works" in Oregon.[13] The Trustee, on the other hand, presents evidence that Robert Langfield resigned from his post as a pastor in California on May 2, 2010.[14] According to Pettit, on or about August 2010, Robert Langfield launched a new church in Klamath Falls, Oregon called, "Revolution Church."[15]

On or about June 2010, Pettit, in an effort to protect her "investment" in the Dunnigan Property, demanded "something in

---

[11] Dec. Pettit at ¶ 6. The Klamath Falls Property consists of an apartment and a house; between July 26, 2008 and August 1, 2010, the Debtors rented the house to a third party. Exh. E in Support of Opposition to Trustee's Objection to Claim of Homestead Exemption, filed October 11, 2011 ("Lease purchase agreement").

[12] Opposition to Trustee's Objection to Claim of Homestead Exemption, filed October 11, 2011 ("Opposition") at 9:14-17.

[13] Opposition at 9:17-19.

[14] Dec. Pettit at ¶ 9.

[15] Exhibits Binder #3 to Trustee's Objection to Claim of Homestead Exemption, filed November 22, 2011, Exh. M ("Evelyn Pettit Declaration, dated November 19, 2011")("Dec. Pettit #2") at ¶ 15.

writing" from Robert Langfield.[16] In response, in a telling letter dated June 15, 2010, Robert Langfield made various statements that evince the Debtors' true intent with respect to the Dunnigan Property.

In the letter, Robert Langfield acknowledged that Pettit had agreed to finance the project on the Dunnigan Property, where the funds contributed would pay Robert Langfield for his time and labor "to make your [Pettit's] home ready,"[17] and he alludes to protecting an "investment."[18] Robert Langfield's letter also contains plain statements regarding the Debtors' intention to move to their true home in Oregon.[19] Moreover, the Debtors registered all three of their motor vehicles in Oregon, and, Robert Langfield obtained a business license in Oregon and registered to vote there, in September 2010 and November 2010, respectively.[20]

## II.    THE POSITIONS OF THE PARTIES

The Trustee posits three arguments to support the Objection

---

16    Dec. Pettit #2 at ¶ 3.

17    Dec. Pettit #2 ("Letter from Robert Langfield addressed to Pettit and Rollins, dated June 15, 2010")("R. Langfield Letter") at ¶ 2.

18    Dec. Pettit #2, R. Langfield Letter at ¶ 5 ("[W]e will seek godly counsel to protect our investments,") and ¶ 13 ("[W]e need to complete the checklist from the building department to permit our barn into a house in order to protect and know what our final investment figures will be.")

19    Dec. Pettit #2, R. Langfield Letter at ¶ 11 ("Julie and I will do what is right . . . from . . . Dads [sic] disappointment with my feeling the Lord [is] leading us to move back home to Oregon"), at ¶ 15 ("We will . . . revisit these issues after we move.")

20    Dec. Pettit #2 at ¶ 16.

Case 11-28853    Filed 01/19/12    Doc 122

(1) the Debtors were and are domiciled in Oregon, not California, (2) the Dunnigan Property is the property of a joint venture between Pettit and the Debtors, and (3) the purported homestead was acquired by defrauding Pettit, and therefore, cannot be claimed as exempt.

The Debtors oppose the Motion.  They contend that (1) the Debtors have established an intent in relocating from Oregon to California to change their domicile to California, (2) the Dunnigan Property is not the property of a joint venture between Pettit and the Debtors, and (3) the Debtors did not acquire the homestead by fraud.

As discussed below, the court finds that the Klamath Falls Property is the true domicile of the Debtors, since the court finds that the Debtors' domicile is not in California -- a threshold matter that negates the availability of a homestead exemption in the Dunnigan Property -- the court will not address other grounds advanced by the Trustee in support of the Objection.

### III.   ANALYSIS

This court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  The Objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**A.  Applicable Legal Standards**

When a debtor files for bankruptcy, a bankruptcy estate is created, which includes all of the debtor's legal or equitable interests in property at the commencement of the case.  § 541(a). Under section 522(b)(1), a debtor may exempt certain kinds of

property from the estate.[21] Under section 522(b)(2), a state may "opt out" of the exemptions provided in section 522(d). California is such an "opt out" state.

As a threshold matter, a debtor may claim as exempt only that property which would be exempt under the laws "applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or a longer portion of such 180-day period than in any other place." § 522(b)(3)(A). As the objecting party, the Trustee bears the burden of proving that the Debtors' claim of exemption is not proper. Rule 4003(c), Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The validity of a claimed exemption is determined as of the date of the filing of the bankruptcy petition. § 522(b)(3)(A), Culver, L.L.C. v. Chiu (In re Chiu), 226 B.R. 743, 751 (9th Cir. B.A.P. 2001).

The meaning of the term "domicile" in a federal statute presents a federal question to be determined under federal common law unless Congress unambiguously adopts state law. Donald v. Curry (In re Donald), 328 B.R. 192, 200 (9th Cir. B.A.P. 2005)(citing Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088 (9th Cir. 1983)). In general, a "domicile is one's permanent

---

21  § 522(b)(1)("Notwithstanding section 541 of [title 11], an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.")

Case 11-28853    Filed 01/19/12    Doc 122

home, where one resides with the intention to remain or to which one intends to return and to which certain rights and duties are attached." Id. at 202 (citations omitted). "Everyone has a domicile and nobody has more than one domicile at a time," and "[o]nce established, [a] domicile continues until superseded by another domicile." Id.

Thus, generally, the question is whether a debtor has the requisite subjective intent to remain or to return to a particular location. The court must make a factual inquiry that requires consideration of all attendant circumstances. "One's own declarations regarding intent are pertinent but ordinarily will be substantially discounted by the court when inconsistent with objective facts." Id. at 203 (citations omitted); Dist. of Columbia v. Murphy, 314 U.S. 441, 456 (1941)(noting that a declaration regarding intent for the purposes of determining domicile "is . . . to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts").

As outlined below, based on objective facts, and giving the Debtors' self-serving declarations due consideration, the court concludes that the Debtors' domicile is in Oregon. The court's determination that, during the relevant period, the Debtors' domicile was in Oregon, effectively ends the inquiry of the propriety of the Debtors' claimed homestead exemption. the Debtors' may not claim a homestead exemption on the Dunnigan Property.

/ / /

**B.   The Debtors' Intent Was to Remain in or to Return to Oregon**

Under § 522(b)(3)(A), the court will examine two time periods to determine the Debtors' domicile. If the Debtors' domicile has been located in a single state for the 730-day period immediately preceding the date of the filing of the petition, then that is the only period of time the court will examine. If, however, during the 730-day period, the Debtors' domicile has not been located in a single state, then the court will examine the place in which the Debtors' domicile was located for the 180-day period immediately preceding the 730-day period, or for a longer portion of such 180-day period than in any other place. Because the court is satisfied that the Debtors' domicile was in Oregon during the 730-day period immediately before the commencement of this case (i.e., April 8, 2009 through April 8, 2011), the court need not examine the 180-day period immediately before the 730-day period.

The Debtors have owned the Klamath Falls Property since March 1983. In their SOFA, the Debtors indicated continuous occupation of this property from March 1983 through May 2008. The break in the chain coincided with the Debtors' purchase of the Dunnigan Property in May 2008. Escrow on that purchase, however, did not close until August 11, 2008. A few months after becoming the lawful owners of the Dunnigan Property, the Debtors made arrangements with Pettit to finance a construction project on the Dunnigan Property. The court finds that the motivation to make improvements on the Dunnigan Property was either a decision to make an investment, a decision to supply a home for relatives, or both.

The Dunnigan Property was under construction from early 2009 until about August 2009.  Soon thereafter, when the modular home was ready to be occupied, Pettit and Rollins relocated from Arizona to the Dunnigan Property.  During 2009, it appears that the Debtors had not spent much time actually living at the Dunnigan Property.  In fact, the Debtors requested that Pettit and Rollins move to Klamath Falls, Oregon.  This was in October 2009.

The following year, in 2010, there were further changes in the Debtors' affairs that demonstrate the impermanence of the Debtors' ties to California.  While the Trustee asserts that Robert Langfield ceased duties as a pastor in Dunnigan, California on May 2, 2010, the Debtors indicate that he was a pastor until July 4, 2010.  At any rate, Robert Langfield ceased to be a pastor in California during the summer of 2010.  Beginning in August of 2010, the Debtors were significantly involved in "religious works" in Klamath Falls, Oregon.  It is inconsistent that the Debtors claim that their true domicile is in California, when, in the fall of 2010, they obtained a business license and launched a new church in Oregon.

In perhaps the most damaging evidence against the Debtors' position, Robert Langfield wrote to Pettit and Rollins on June 15, 2010.  In no uncertain terms, he indicated the Debtors' desire "to move back home to Oregon," and impressed upon Pettit that they would revisit their financial issues "after we move."  In the same letter, Robert Langfield refers to the Dunnigan Property as a mere investment rather than a future home.  To boot, the Debtors maintained three motor vehicles, all of which

are registered in Oregon, and they are registered to vote in Oregon.

Finally, the Debtors' own SOFA indicates that they occupied the Klamath Falls Property, exclusively, from October 2010 through February 2011. After examining the objective circumstances and the Debtors' mixed activities in California and Oregon, the court concludes that, between April 8, 2009 and April 8, 2011, the Debtors' domicile was, in fact, the Klamath Falls Property. Robert Langfield's statements in his letter to Pettit and Rollins clearly evince the subjective intentions of the Debtors. Moreover, certain rights of the Debtors, such as vehicular and voter registrations, are attached to the state of Oregon.[22]

### IV.    CONCLUSION

The court concludes that the Debtors had the subjective intention of maintaining their permanent home in Oregon, and thus, that the Objection should be sustained.

The court will enter an appropriate order.

Dated:   January 19, 2012

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

---

[22] While the court considered the Debtors' declarations in support of their opposition to the Objection, the court substantially discounted their probative weight since objective facts appeared to contradict the declarations.

| | |
|---|---|
| 1 | PLEASE SERVE THE FOLLOWING PARTIES |
| 2 | |
| 3 | Robert & Julie Langfield |
| 4 | P O Box 142<br>Dunnigan CA 95937 |
| 5 | |
| 6 | J Michael Hopper<br>PO Box 73826<br>Davis CA 95617 |
| 7 | |
| 8 | Cynthia R Flahive<br>2360 East Bidwell Street, Suite 105 |
| 9 | Folsom CA 95630 |
| 10 | |
| 11 | J Michael Hopper<br>PO Box 73826<br>Davis CA 95617 |
| 12 | |
| 13 | J Russell Cunningham<br>1830 15th St |
| 14 | Sacramento CA 95811 |
| 15 | |
| 16 | Evelyn Pettit Rollins<br>c/o George T Burke<br>428 J St #221 |
| 17 | Sacramento CA 95814 |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |